Elizabeth D. Tate, SBA # 32659
2953 North 48th Street
Phoenix, AZ 85018-7749
Phone: (602) 670-4653
Fax: (602) 595-5959
E-mail:   attorneyelizabethtate@yahoo.com
Attorney for Plaintiff, Mehmood Mohiuddin

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Mehmood Mohiuddin,** <br><br> **Hitching Post Pizza & Pub, LLC** <br><br> Plaintiffs, <br><br> v. <br><br> **City of Apache Junction,** <br><br> **Bryant Powell, City Manager in his official and individual capacities,** <br><br> **Matt Busby, Assistant City Manager, in his official and individual capacities,** <br><br> **Kathleen Connelly, City Clerk in her official and individual capacities,** | **Case # CV-18-01180-PHX-GMS** <br><br> **FIRST AMENED FCOMPLAINT AND DEMAND FOR JURY TRIAL** |

**Larry Kirch, Development Services Director, in his official and individual capacities,**

**Rudy Esquivias, Senior Planner/Zoning Administrator, in his official and individual capacities,**

**Joel Stern, City Attorney, in his official and individual capacities,**

Defendants.

Plaintiff Mehmood Mohiuddin by and through Elizabeth D. Tate, his undersigned attorney of record, submit this First Amended Complaint for relief and Demand for Jury Trial pursuant to Federal Rules of Civil Procedure ("FRCP"), Rules 3, 7(a)1, 8(a), and 38(a, b).

## Plaintiff's Two Claims

1. 42 U.S.C. 1983 – Violation of Fourteenth Amendment right to equal protection of the law with respect to operation a business establishment.

2. 42 U.S.C. 1981 – Race discrimination in the making of a contract.

### 3. The Parties, Jurisdiction and Venue

1. Plaintiff Mehmood Mohiuddin is and has been always material to this Complaint, an adult resident of Pinal County, Arizona. Mohiuddin is of Pakistani national origin who emigrated to the United States from Pakistan and then became a naturalized citizen of the United States. Mohiuddin is the subject of Defendant's racial slurs and discriminatory regulation and interference with his LLC, Hitching Post Pizza & Pub.

2. Plaintiff Hitching Post Pizza & Pub, LLC " Hitching Post", operates a restaurant/bar in Apache Junction that provides food and entertainment to is customers including bull-riding and music. Hitching Post Pizza & Pub has been the target of Defendant's discriminatory regulation of it business by requiring a Conditional Use Permit, "CUP" that unreasonably restricts Hitching Post's business operations and expansion.

3. The Defendant the City of Apache Junction is and has been always material to this Complaint, a City located in Pinal and Maricopa Counties in Arizona with a population of about 35,840. Most Apache Junction residents reside in Pinal County. The City of Apache Junction operates its offices at 300 E. Superstition Boulevard in Apache Junction, Pinal County, Arizona.

4. Bryant Powell is Apache Junction's City Manager. Powell is the head policy and decisionmaker for the Economic Development Department that includes Zoning and Planning the implemented discriminatory policies of the Economic Development Department against Plaintiffs including the discriminatory CUP. Powell was responsible for Cowboy's Up, Inc. CUP which only had six reasonable condition. Powell provided Cowboy's Up, Inc. a similarly situated business with a reasonable CUP while Powell provided Plaintiffs with a discriminatory CUP with 14 arbitrary and capricious conditions, Powell deprived Plaintiffs of equal protection of the law.

5. Matt Busby is the City of Apache Junction's Assistant Manager who attends City Council meetings to assist Powell in managing the day-to-day internal and external operations of Apache Junction. Busby oversees the Economic Development Department and helped to implement and approved the discriminatory actions of Zoning and Planning who oversaw the approval process for the expansion of Plaintiffs' business. Busby assisted Powell to devise and enforce the Hitching Post's discriminatory CUP.

6. Kathleen Connelly is the City of Apache Junction's City Clerk who is responsible for preparing and keeping minutes of City Council and Committee meetings. Connelly oversees the City's Public Record's request program.  In 2015, Connelly conspired with Former Mayor, John Insalaco, to launch a state tax audit of Plaintiffs finances to find out the source of Plaintiffs' money to purchase Plaintiffs'  property located on N. Cortez Road that serves a parking lot for Plaintiffs' business. Connelly is responsible for denying Plaintiffs equal protection of the law and discriminated in the making of a contract when she instructed Deputy Clerk, Jan Mason  to deny Mohiuddin a copy of town council  meetings and complaints against his business while providing the same documents Mohiuddin requested to another Caucasian resident.

7. Larry Kirch is the City of Apache Junction's Development Services Director responsible for implementing the zoning ordinances and CUP process that operates to discriminate against Plaintiffs. Kirch played a role in developing the discriminatory CUP for the Hitching Post.

8. Rudy Esquivias is the City of Apache Junction's Senior Planner/Zoning Administrator whose responsibility is to present and discuss proposed business plans submitted to the Economic Development Department. Esquivias signed the CUP for Cowboy's Up, Inc. which contained only six reasonable conditions.  Esquivias collected the discriminatory requirements  of the individually named City Defendants added as 28 conditions to  the Hitching Post's CUP that Esquivias signed.

9. Joel Stern is the City Attorney responsible for enforcing the Defendant's discriminatory policy and capriciously deciding on June 9, 2018, a weekend,   and communicating to Plaintiffs' land use and zoning attorney  that Plaintiffs' had "enough time" to build the fence required by the CUP.   Stern instructed Plaintiffs not to use his parking lot on N. Cortez Rd or face penalties to effectively shut down Plaintiffs' business by providing Plaintiffs' patrons no   place to park.

10. All events alleged herein occurred within Pinal County in the State of Arizona.

11. This Court has subject matter jurisdiction for Plaintiff's claim herein because it arises from federal law to-wit: 42 U.S.C.

1983, as provided by 28 U.S.C. 1331 and 28 U.S.C. 1343(a)(3,4).

**12.** This Court (The U.S. District Court for Arizona) is the proper venue for this action pursuant to 28 U.S.C. 1391(b)(1,2).

### 4. General Fact Allegation

**13.** Plaintiff Mehmood Mohiuddin operates a restaurant/bar named "The Hitching Post" located at 2341 N. Apache Trail in Apache Junction, AZ. The Hitching post is operated as Hitching Post Pizza Pub, LLC. Plaintiffs employ 8 workers, 6 of whom are waitresses in the summer. During the winter months Plaintiffs employ 25 people.

**14.** In 2015, Mohiuddin expanded his business to offer bull-riding on Thursdays and Saturdays which occurs on the property located at 2341 N. Apache Trail. Mohiuddin modified the Hitching Post's economic development plan to include bull-riding. When Plaintiffs acquired the N. Cortez Road property for parking, Defendant Kirch approached Mohiuddin to direct him to lease the Cortez Road property from himself to the Hitching Post to satisfy City requirements. On December 12, 2015, Mohiuddin honored Kirch's request and executed a lease between himself and Hitching Post Pizza & Pub, LLC so

the Cortez Road property could be utilized for parking. Kirch later claimed that he did not know that a lease between Mohiuddin and the Hitching Post Pizza & Pub even existed.

15. Mohiuddin utilized the Cortez Road property for two years without incident. In 2017, Larry Kirsch, Director of Planning and Zoning informed Mohiuddin that to continue to utilize the Cortez Road property for parking that he would have to apply for a Conditional Use Permit "CUP". Kirsch claimed that the reason he needed to apply for the CUP was that the City received a valid complaint from neighbors adjacent to the Hitching Post which was not true.

16. Mohiuddin's neighbors, led by the City Defendants, have continually harassed him, including former Mayor Insalako. The neighbors made numerous baseless complaints with the Apache Junction Police Department, Pinal County Health Department, Pinal County Dust Control & Permits, Arizona Department of Liquor and Arizona Department of Environmental Quality but none of those agencies have ever found reason to cite Mohiuddin. Mohiuddin has also learned that over the years, City officials referred to

him as sand-nigger, camel jockey and terrorist including Defendant Connelly.  In fact, in 2015,  Defendant Connelly conspired with former Mayor Insalaco to have the state conduct a tax audit of Plaintiff's revenue to find out the source of Plaintiffs' funds used to purchase the N. Cortez Road property. During his tenure, former Mayor Insalaco bluntly told Mohiuddin that  the "did not belong here" and that "this was their town" and referred to Mohiuddin with racial epithets behind Mohiuddin's' back.    .

**17.**     In December of 2017, Mohiuddin once again employed the services of an attorney to submit the required CUP application. City officials gave Plaintiffs a hard time.  The attorney informed Mohiuddin that city officials "did not like" Mohiuddin.  The City responded to Plaintiffs' application by placing 28 conditions on Mohiuddin's CUP, 13 of which were arbitrary and capricious as follows:

a. Condition 1 requires that Mohiuddin construct, within six months, a minimum of 12 foot wooden screen fence for parking  that violates City code that requires parking fences to be a minimum of three feet or to a maximum of four feet high.

b. Condition 2 requires that within 12 months, Mohiuddin construct a 12 foot decorative wall around his property that which also would violate City code which limits walls to an 8 foot maximum.

c. Condition 3 requires that Mohiuddin bear the cost of a traffic study for all the businesses on Highway 88 without contribution from the other businesses. Mohiuddin spoke to Arizona Department of Transportation who informed him that the Highway 88 does not have enough traffic to warrant a traffic study.

d. Condition 4 requires Mohiuddin to install a septic system to be inspected by City engineers that are not even in the City's jurisdiction. Pinal County would be responsible for any inspection.

e. Condition 6 and 7 requires that concerts end on Mohiuddin's property by 7 p.m. and that he must hire city police officers to help with traffic and safety during the concerts. Plaintiffs informed the City that his business will not offer concerts yet condition 6 and 7 are still required of him.

f. Condition 8 requires that bull-riding begin a 7 p.m. and end at 9 p.m. when Mohiuddin had already been approved to operate bull-riding from 8 p.m. to 10 p.m.

g. Condition 9 requires that all similar or lesser intensity activities take place during the new bull-riding hours that violate the previous hours of operation that Mohiuddin had been granted under his development agreement. Development agreements are customarily modified by amendment not CUPs.

h. Condition 10 requires that all music and announcements end at 9 p.m. and lights turn off by 10 p.m. which violates the previous hours of operation Mohiuddin had been granted.

i. Condition 12 requires that any activities in new areas where Mohiuddin chooses to expand must end at 9 p.m. weekdays and 10 p.m. weekends in violation to his current development agreement.

j. Condition 13 prohibits Mohiuddin from using storage lot area for overflow parking or employee parking when the City did not prohibit previous Caucasian owners from using the area for overflow parking.

k. Condition 15 subjects Mohiuddin's business to arbitrary supervision in the future.

l. Condition 17 prohibits Mohiuddin's CUP from being transferable should he sell my business in the future which will operate to deter others from purchasing his business.

m. Condition 18 grants Mohiuddin use of his economic development plan until the City nullifies the economic development agreement based on no objective standards.

18. With the assistance of others who were outraged by the blatant discrimination by the City Defendants, Mohiuddin learned that in 2013, the City Defendants required Cowboys Up, Inc. a similarly situated, Caucasian owed, restaurant/bar to apply for a CUP. Cowboy Up, Inc. CUP only had 6 objective, reasonable conditions as follows:

a. Condition 1 obtain proper building permits

b. Condition 2 continue to use a freestanding sign on its property

c. Condition 3 provide accent landscaping

d. Condition 4 submit drawings for the restaurant

e. Condition 5 take reasonable precautions to keep outside music at a level that does not disturb neighbors

    f. Condition 6 the planning and zoning commission reserved the right to   reconsider the CUP for non-compliance with the CUP

**19.**  Mohiuddin, suspecting that he was being discriminated against, attempted to make a public request to learn whether the City had issued any CUPs to other businesses in the City and copies of complaints against his business.   On January 9, 2018, Jan Mason, Deputy City Clerk under the direction of Defendant Connelly refused to honor Mohiuddin's public records request.   Mason told Mohiuddin that she did not have to respond to his public records request because it was for "research".   It was not. Defendant Connelly   honored the same public records requests for a Caucasian resident but denied equal treatment to Mohiuddin.

**20.**  In 2017, another business, Handlebar, also owned by a Caucasian and similarly situated,   purchased property for a parking lot. The City did not require Handlebar to submit at CUP but permitted Handlebar to utilize the parking lot with a lease to satisfy City requirements. To this day, the City Defendants permit Handlebar to lawfully operate its parking lots with a lease between the business owner and its company.

**21.**   Confused by the arbitrary and capricious actions of the City, Mohiuddin inquired of Defendant Powell, City manager of his operating hours. On May 30, 2018, Powell responded to Mohiuddin that he was free to operate his business under his current economic development agreement but later changed his mind. According to the proposed CUP, Mohiuddin has six months to meet its conditions and to operate his business in the meantime. The Hitching post CUP is scheduled to be approved on June 11, 2018. There is no means for Plaintiffs to appeal.

**22.**   On June 9, 2018, a weekend, Defendant Stern arbitrarily and capriciously informed Plaintiff's land use/zoning attorney, that Plaintiffs may no longer provide its patrons with parking park on the Cortez Road property as previously permitted. Stern claimed that the City finalized the provisions of the CUP and had given Mohiuddin, "enough time" to construct a fence. The CUP gave Mohiuddin 6 months to construct the fence, the time for which had not passed at the time Stern told Mohiuddin not use his parking lot. Mohiuddin estimates that to construct the fences contemplated by the CUP and other requirements it would cost Plaintiffs upwards of $100,000.00.   Without funds to make

the modifications, the Defendants will have shut the doors of the Hitching Post for lack of parking which would cripple Plaintiffs' business. Plaintiffs also fear that should it find the resources to build the fence that the City Defendants will only at a later day require Plaintiffs to tear it down because the fence as requested violates City code.

**23.** The City of Apache Junction has a policy or custom of denying minorities equal protection of the law. To wit: a minority business owner of an establishment called Cobbs was compelled to enter into a hold harmless agreement concerning fire department qualifications despite his business passing fire department inspections. The City of Apache Junction also has a policy of race discrimination with City employees freely using racial epithets to refer to Mohiuddin.

**24.** The City of Apache Junction by requiring Mohiuddin to abide by a CUP under onerous terms while making no such requirements for Caucasian business owners of similarly situated businesses have denied Mohiuddin equal protection of the law. The City of Apache Junction acted pursuant to its policy of race discrimination.

**25.** As the direct and proximate result of the Defendant City of Apache Junction and Defendant Powell denying Mohiuddin equal protection of the law, Mohiuddin and the Hitching Post have suffered damages including, inter alia, the loss of the operation of their business and resulting lost income, emotional distress, sadness, loss of self-esteem, worry about how Mohiuddin will support himself without being able to lawfully operate the Hitching Post.

**26.** Each of the individually named Defendant's by approving and/or placing onerous provisions on Plaintiffs' CUP have discriminated because of national origin in the making of a contract as prohibited by 42 U.S.C. 1981.

**27.** As the direct and proximate result of the individually named Defendants' discrimination in the making of a contract, Plaintiffs Mohiuddin and Hitching Post have suffered damages including, inter alia, the loss of the operation of their business and resulting lost income, emotional distress, sadness, lost of self-esteem, worry about how Mohiuddin will support himself without being able to lawfully operate the Hitching Post.

**28.** <u>Demand for Jury Trial</u>

Plaintiff Mohiuddin demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution and FRCP Rule 38(a,b).

### 29.     Relief Requested

<u>Count One as to City of Apache Junction and Defendant   Powell 42 U.S.C. 1983 – Violation of Fourteenth Amendment right to equal protection of the law to operate a business establishment</u>

1. Compensatory damages, including, inter alia, emotional distress damages, harm to reputation, and other general tort damages.
2. Punitive damages as to Bryant Powell.
3. Preliminary and Permanent Injunctive relief to enjoin acts of discrimination and to permit Mohiuddin to lawfully operate his business.
4. Reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. 1988 (b)(c), and FRCP Rule 54(d)2.
5. Taxable costs incurred herein, pursuant to FRCP Rule 54(d)1, and 28 U.S.C. 1920.

<u>Count Two as to Defendants Powell, Busby, Connelly, Kirch, Esquivias and Stern</u>

<u>42 U.S.C. 1981 – Discrimination in the making of a contract based on national origin</u>

1. Compensatory damages, including, inter alia, emotional distress damages, harm to reputation and other general tort damages
2. Punitive damages
3. Preliminary and Permanent Injunctive relief to enjoin acts of discrimination to prevent future national origin discrimination and to permit Plaintiffs to lawfully operate their business.
4. Reasonable attorney's fees and expert fees incurred herein, pursuant

1       to 42 U.S.C. 1988 (b)(c), and FRCP Rule 549d)2.

2   5. Taxable costs incurred herein, pursuant to FRCP Rule 54(d)1 and 28 U.S.C 1920.

6 Dated this 11th day of June 2018.      Respectfully submitted,

/s/ Elizabeth D. Tate
_____
Elizabeth D. Tate